IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| United States of America,<br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Gerson Emir Cuadra Soto<br>　　　　　Defendant. | Case No. 4:25mj3267<br><br>**Motion to Dismiss Criminal Complaint and Request for Hearing** |

　　　　Gerson Emir Cuadra Soto moves the Court, pursuant to Federal Rules of Criminal Procedure 12(b)(2), 12(b)(3)(A)(i), and 12(b)(3)(B)(v), to dismiss the criminal complaint pending against him on two bases: 1) venue in the District of Nebraska is improper, and 2) the complaint fails to allege a cognizable substantive offense.

　　　　Mr. Cuadra Soto faces a criminal complaint alleging a misdemeanor violation of 8 U.S.C. § 1325. Section 1325(a) prohibits (1) "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers[;]" (2) "elud[ing] examination or inspection by immigration officers[;]" and (3) "attempt[ing] to enter or obtain[ing] entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact[.]"

　　　　For 75 years, the Department of Justice concluded that the crime of illegal entry concluded at moment of entry. In June 2025, however, the Department of Justice changed its mind and decided that illegal entry – particularly, "eluding," the second means of violating the statute – was a continuing offense, *i.e.,* that being an undocumented immigrant was, in and of itself, a crime. This change ignores the text

1

of the relevant statutes, legislative history, and at least two provisions of the United States Constitution. This change asks the Court to ignore the presumption against continuing offenses and hopes to wildly expand Immigration and Customs Enforcement actions.

The complaint against Mr. Cuadra Soto fails to allege the substantive elements of an illegal-entry offense that could have occurred within the District of Nebraska. Moreover, the prosecution of Gerson Emir Cuadra Soto in the District of Nebraska for Illegal Entry is unconstitutional.

### The longstanding consensus that § 1325 offenses can only be prosecuted in the district in which the person entered.

"Many constitutional provisions are ambiguous and subject to reasoned debate about their scope. The constitutional guarantee of venue in criminal cases isn't one of them." Fish, Eric S. and Keller, Doug, *Fabricating the Crime of Undocumented Presence* (November 14, 2025) at 17. Available at SSRN: https://ssrn.com/abstract=5750862 or http://dx.doi.org/10.2139/ssrn.5750862 (hereinafter "Fish & Keller"). Article III, section 2 of the U.S. Constitution mandates that the "[t]rial of all Crimes…shall be held in the State where the said Crimes shall have been committed[.]" *See id.* Moreover, the Sixth Amendment assures defendants the right to "an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." *See id.*

The venue statute that (ostensibly) authorizes a § 1325 prosecution in the district where the person is arrested is 8 U.S.C. § 1329, which provides that illegal

entry offenses can be prosecuted "at which the violation may occur" or "at which the person . . . may be apprehended." A 1978 Department of Justice Office of Legal Counsel memo, however, concluded that § 1329 is unconstitutional and instructed federal prosecutors to only prosecute § 1325 offenses at the district of entry. *See* Memorandum from J. Harmon, Assistant Atty. Gen. Office of Legal Counsel, Re: Immigration and Nationality Act (8 U.S.C. § 1329) – Eluding Inspection – Criminal Offense – Venue (May 18, 1978) ("1978 OLC Op.").

In fac, this DOJ position predates 1978.

In 1952, DOJ lawyers wrote to reassure the Commissioner of the Immigration and Naturalization Service – who had expressed concerns that the 1952 revisions to the illegal entry and illegal reentry offenses would substantially increase prosecutions in the country's interior – that the illegal entry crime focused on point of entry and was not a continuing offense:

> Since the illegal entry of an alien into the United States is accomplished upon a traverse of the imaginary border line, the crime is completed upon physical arrival in the United States and cannot in any sense be construed as a continuing offense. Prosecution therefore in any district other than that in which the illegal entry can be proved, is therefore, forbidden by the Constitution[.]

National Archives, RG 85, S.A. Andretta, Administrative Attorney General, Letter to Argyle R. Mackey, INS Commissioner, Nov. 24, 1952 (on file with Eric Fish); *see also* Fish & Keller at 25. The following year, the DOJ reaffirmed this position in its first "U.S. Attorneys' Manual," which noted that § 1325 prosecutions should be brought "in the district where the alien actually entered or attempted to enter and not in the district where found." U.S. Attorneys' Manual, at 77 (1953).

3

Several years later, the United States Supreme Court, in *United States v. Cores,* 356 U.S. 405, 406 (1958), affirmed the view that illegal entry is not a continuing offense. These "entry" crimes, the Court wrote, are "limited to a particular locality and hardly suggest continuity." *Cores,* 356 U.S. at 408, n. 6. *See also United States v. Rincon-Jimenez,* 595 F.2d 1192, 1193-94 (9th Cir. 1979) (noting that § 1325(a)(2) was *not* a continuing offense and that "the doctrine of continuing offense should be applied only in limited circumstances….These considerations…require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.")

**Another break from consensus**

In June 2025, however, after a half-century of agreeing with, and advancing, this consensus position, the OLC issued a memorandum reinterpreting the second part of § 1325 – "eluding" – to be a continuing offense. *See* Memorandum from M. Scott Proctor, Deputy Assistant Attorney General, Office of Legal Counsel, Re: Whether Eluding Inspection Under 8 U.S.C. § 1325(a)(2) Is a Continuing Offense (June 21, 2025) ("2025 OLC Mem.) The goal of this memo is clear: if an undocumented person can be accused of *actively* violating the law – *e.g.,* "eluding inspection" – the Executive Branch's powers of search and arrest expand.[1] Now, the

---

[1] In a footnote, Fish and Keller wistfully note the mid-century Department of Justice's "administrative constitutionalism" which led to "self-limiting policies that implemented the Constitution's venue provisions[.]" Fish & and Keller at 24, n. 161.

4

Department of Justice has begun charging § 1325 offenses away from the districts where the defendants have crossed.

But – and this is important -- to charge a defendant under § 1325 in a non-border district, the 2025 OLC Memo reasons, the charge must be filed under § 1325(a)(2) – eluding.

Undoubtedly, the (current) Department of Justice's theory of this case is that prosecution of Mr. Cuadra Soto is possible in the District of Nebraska because he was found here and one type of illegal-entry offense (eluding) is (suddenly) a continuing offense.

> **The complaint does not allege that Gerson Emir Cuadra Soto eluded inspection. Even if it did, he could not be prosecuted for it here.**

First, the complaint never alleges that Gerson Emir Cuadra Soto eluded examination or inspection – the lone § 1325 offense that the 2025 OLC memo seemingly claims is continuing, *i.e.,* the only offense the memo asserts *could* be prosecuted in Nebraska. The complaint does mention the three ways one might violate 8 U.S.C. § 1325 but does not specify which one the affiant thinks Mr. Cuadra Soto violated. Dkt. Entry # 1 at 3. The only statement relevant to § 1325 is a description of the act of entry, *i.e.,* that, according to a source, in "November 2022, [Cuadra Soto] illegally crossed the United States border between Mexico and Texas. A records check revealed CUADRA SOTO had never applied for or been granted permission to enter the United States." Dkt. Entry # 1 at 4. Illegally entry alone, under § 1325 (a)(1), even under the terms of the 2025 OLC memo, is a non-

continuing offense. The complaint does not allege that Mr. Cuadra Soto entered at a point of entry (an element of eluding, *see Corrales-Vazquez, supra*). It does not allege the Mr. Cuadra Soto eluded at all.

Second and third: eluding examination and inspection is: (1) a non-continuing offense that (2) must still be prosecuted in the district where it occurred.

While the complaint mentions the statute, it does not inform the magistrate judge that, for much of the preceding 75 years, the Department of Justice would not have brought such a complaint in the District of Nebraska because it considered such prosecutions unconstitutional. The prior iterations of the Department of Justice – those serving under Presidents Eisenhower, Kennedy, Johnson, Nixon, Ford, Carter, Reagan, Bush, Clinton, Bush, and Obama – were correct that eluding is not a continuing offense and that, as such, all § 1325 offenses should be tried in the district in which the immigrant entered.

In 2019, the Ninth Circuit, per Circuit Judge Jay Bybee,[2] vacated a conviction for § 1325(a)(2), rejecting the Trump I Administration's broad definition of eluding. *United States v. Corrales-Vazquez,* 931 F.3d 944 (9th Cir. 2019). By way of a bit of background, in 2018-2019, the Trump I Administration tried to prosecute some § 1325 offenses under the § 1325(a)(2) (eluding) theory, in order to avoid a non-delegation argument. *See* Fish & Keller at 32. Mr. Corrales-Vazquez was

---

[2] A former Assistant Attorney General at the Department of Justice's Office of Legal Counsel, Judge Bybee was appointed to the Ninth Circuit Court of Appeals by President George W. Bush in 2003.

arrested between points of entry, charged with eluding, convicted after a bench trial, and appealed.

Judge Bybee noted that a noncitizen "eludes" examination and inspection only if he enters "at a time and place where the alien is at risk of undergoing those processes in the first place," *i.e.,* that eluding does not continue away from the examination points. 931 F.3d at 949. Judge Bybee concluded that the Trump I Administration's interpretation "disrupt[ed]" the statutory scheme's "careful structure" and created, by the government's own admission, surplusage. *Id*. at 950-51. Without proof that Mr. Corrales crossed at an examination and inspection point, there was insufficient evidence to convict him of the eluding offense.

The current complaint does not allege that Mr. Cuadra Soto crossed at an examination and inspection point – an element of the offense of eluding. Even if the complaint *has* alleged that, *Corrales-Velazquez* holds that eluding does not continue once one leaves the area "where the alien is at risk of undergoing those processes in the first place." For the 2025 OLC memo to make sense, and for prosecution in the District of Nebraska to be constitutional, Mr. Cuadra Soto's offense would have to be a continuing offense and it isn't.

**Conclusion**

After *Corrales-Vazquez,* the government had to vacate almost 500 § 1325 convictions. Fish & Keller, at 35 (citing Maya Srikrishnan, *Hundreds of Illegal Entry Convictions Will be Overturned*, Voice of San Diego (Feb. 12, 2020), https://voiceofsandiego.org/2020/02/12/hundreds-of-illegal-entryconvictions-will-be-

7

overturned/ ). The government, however, seems poised to try this eluding strategy again – not to avoid a non-delegation argument, but to prosecute § 1325 cases away from border districts. Adopting this (novel and improper) interpretation not only runs afoul of the two venue provisions of the United States Constitution, it hopes to effectively expand the Executive Branch's (and ICE's) search powers. *See* Fish & Keller at 5. "Administrative warrants for immigration enforcement do not let ICE agents go into buildings without permission. But if undocumented immigrants are committing a crime by their mere presence, ICE agents can seek judicial warrants that let them break into buildings." *Id*. Setting aside the thinly veiled political motivation for expanding the definition of an immigration-related crime, the present criminal complaint (implicitly) wrongly interprets both § 1325 and the constitutional provisions that bar prosecution in the found district.

Dismissal of the complaint for failing to state an offense and for lack of venue is appropriate. Prosecuting Mr. Cuadra Soto in this district is unconstitutional.

WHEREFORE, Gerson Emir Cuadra Soto asks this Court to dismiss the criminal complaint. He requests a prompt hearing on his motion at his December 15, 2025 detention hearing (where his preliminary hearing was going to be.)

    Gerson Emir Cuandra Soto, Defendant,

    By /s/ Richard H. McWilliams
    **Acting Federal Public Defender**
    222 South 15th Street, #300N
    Omaha, NE 68102
    Telephone: (402) 221-7896
    rich_mcwilliams@fd.org