IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:25MJ3267 |
| vs. | |
| GERSON EMIR CUADRA SOTO, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on Defendant Gerson Emir Cuadra Soto's motion to dismiss the criminal Complaint for improper venue and failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(2), 12(b)(3)(A)(i), and 12(b)(3)(B)(v). Filing No. 13. The Government opposes Defendant's motion. For the reasons set forth herein, Defendant's motion is granted.

## STATEMENT OF FACTS

Defendant is charged in a one-count criminal Complaint for illegal entry into the United States in violation of 8 U.S.C. § 1325. Filing No. 1. The affidavit attests Defendant is a Honduran National. A confidential source of information informed the FBI that Defendant crossed the United States border between Mexico and Texas. Law enforcement reviewed documents obtained from Honduran law enforcement and United States immigration authorities to determine that Defendant did not travel to the United States with a visa or an alternative travel authorization. Defendant was eventually located and arrested in Nebraska.

1

**LEGAL STANDARD**

Since Defendant is charged with a petty offense, this matter is before the Court pursuant to Federal Rule of Criminal Procedure 58. "Where the relevant facts are disputed, venue is a question of fact for the jury to decide." *United States v. Nguyen*, 608 F.3d 368 (8th Cir. 2010) (citing *United States v. Bascope-Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995)). "However, where the relevant facts are not in dispute, the court may determine venue as a matter of law." *Id.* (citing *Bascope-Zurita*, 68 F.3d at 1062). "The government must establish venue 'by a preponderance of the evidence.'" *United States v. Mink*, 9 F.4th 590, 601–02 (8th Cir. 2021) (quoting *United States v. Morrissey*, 895 F.3d 541, 550 (8th Cir. 2018)).

**ANALYSIS**

Section 1325 provides that: "Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact" is guilty of a petty offense.

Defendant argues venue in the District of Nebraska is improper because Defendant entered the United States via Texas. The Government does not argue venue in Nebraska exists pursuant to subsections (1) or (3). The Government argues venue in Nebraska exists to prosecute subsection (2) because eluding examination or inspection is a continuing offense and, thus, Defendant was committing this offense in Nebraska.

Venue is a constitutional issue. Article III provides criminal trials "shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3; *see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law[.]").

Congress has the power to define where a crime is committed. As it pertains to this case, Congress specifically provided that criminal prosecutions under section 1325 "may be instituted at any place in the United States at which the violation may occur or at which the person charged . . . may be apprehended." 8 U.S.C. § 1329.

Defendant was apprehended in Nebraska. This would normally end the analysis. The problem is "it is incongruous to assert that a statute could effectively authorize the prosecution of a completed offense in a district in which no part of that offense occurred, when the Constitution mandates otherwise." *United States v. Diaz-Diaz*, 135 F.3d 572, 577 (8th Cir. 1998) (recognizing the incongruity as it applied to section 1326—illegal reentry—without reaching the merits of defendant's challenge to venue on these grounds). As the Ninth Circuit stated, "being 'apprehended' is not the crime with which [Defendant] was charged and the place of apprehension is not necessarily the district where the crime was committed." *United States v. Hernandez*, 189 F.3d 785, 790 (9th Cir. 1999).

The Government argues venue is proper in Nebraska because eluding examination or inspection is an offense that continues until the person is apprehended. "A federal crime may be prosecuted in any district in which such offense began, continued, or was completed." *United States v. Gentry*, 158 F.4th 937, 940 (8th Cir. 2025) (quoting *Mink*, 9 F.4th at 601); *see also* 18 U.S.C. § 3237. "The *locus delicti*, or the place of the wrong, 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Mink*, 9 F.4th at 601 (quoting *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998)). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)).

The Government raises a novel issue with no binding precedent from the Eighth Circuit or the Supreme Court and limited, conflicting persuasive authority from other sources. *See United States v. Rincon-Jimenez*, 595 F.2d 1192, 1194 (9th Cir. 1979) (section 1325 is not a continuing offense for statute of limitations purposes); *United States*

3

v. Cavillo-Rojas, 510 Fed. App'x 238, 249 (4th Cir. 2013) (unpublished) (same);[1] *United States v. Vega*, 1:25-mj-00399, 2025 WL 3558747, at *2–4 (D. Me. Dec. 12, 2025), *appeal docketed*, No. 25-2199 (1st Cir. Dec. 16, 2025) (dismissing section 1325 eluding charge after finding it is not a continuing offense). *But see United States v. Espinoza-Cabrera*, 8:25-mj-365, Filing No. 17 (N.D.N.Y. Dec. 10, 2025) (section 1325 eluding is a continuing offense).

Accordingly, the Court begins with a plain reading of the statute. A few principles of statutory interpretation apply here. The Supreme Court has admonished courts not to so freely construe Congress's venue provisions "as to give the Government the choice of 'a tribunal favorable' to it." *Travis v. United States*, 364 U.S. 631, 634 (1961) (citing *United States v. Johnson*, 323 U.S. 273, 275 (1944)). "[Q]uestions of venue are more than matters of mere procedure. 'They raise deep issues of public policy in the light of which legislation must be construed.'" *Id.* (citing *Johnson*, 323 U.S. at 276). Additionally, when a statute is susceptible to more than one plausible construction, the canon of constitutional avoidance applies. *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). This means, "[w]hen 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that th[e] Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Id.* (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). This canon should not be invoked to expand the reach of a criminal statute. *United States v. Davis*, 588 U.S. 445, 464 (2019). Finally, "[o]ne of the most basic interpretive canons" is "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). "This principle . . . applies to interpreting

---

[1] "Although issues of venue are obviously different from issues involving statutes of limitations, the two concepts are clearly related." *United States v. Dunne*, 324 F.3d 1158, 1166 (10th Cir. 2003) (citing *Hernandez*, 189 F.3d at 790). Statute of limitations cases articulate *when* a section 1325 violation is committed. "Once the *when* is determined, the *where* follows as a matter of fact and logic." *Hernandez*, 189 F.3d at 790 (looking to statute of limitations cases for guidance on where venue is located for section 1326 offenses). Thus, the analysis in these cases is helpful even though the standard for a continuing offense for statute of limitations purposes differs from the standard for a continuing offense for venue purposes.

any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593 (2010).

Read in the context of the entire statutory scheme, eluding examination or inspection to enter the United States is not a continuing offense. Congress set forth three crimes in section 1325. It is a crime to enter the United States at an unauthorized time or place (such as outside a port of entry). § 1325(a)(1). It is a crime to elude examination or inspection. § 1325(a)(2). And it is a crime to obtain entry via misrepresentation. § 1325(a)(3). If a person eludes inspection by entering in an unauthorized place, they have committed the crime in (a)(1). If this action is also understood as eluding inspection under (a)(2), (a)(2) swallows (a)(1) and renders the crime of entry in (a)(1) superfluous. The more logical reading of the statutes suggest that Congress intended to criminalize the two ways a person can illegally enter the United States: by (1) avoiding the designated port of entry altogether or (2) deceiving immigration officials by eluding inspection or lying to officials during the inspection.

Once the person enters the United States, a separate statute applies, requiring the person to register or be charged with a different crime. 8 U.S.C. §§ 1302, 1306. This crime is superfluous if eluding inspection is a continuing offense. If living in the United States without reporting for inspection at the nearest port of entry or to the nearest immigration official is a crime, there is no need to separately penalize aliens who fail to register once they enter the country. *See generally I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) (citing both section 1325 (illegal entry) and sections 1302 and 1306 (failure to register statutes) for the proposition that "entering or remaining unlawfully in this country is . . . a crime").

Finally, after a person is removed from the United States, it is a crime for them to re-enter or be "at any time found in" the United States. § 1326. Both section 1325 (entry) and section 1326 (re-entry) use the verbs "enter" or "attempt to enter." But section 1326 includes a continuing offense because it uses this "found in" language. *See Diaz-Diaz*, 135 F.3d at 577–78 (quoting *United States v. Gomez*, 38 F.3d 1031, 1034–35 (8th Cir. 1994)). If Congress intended to make illegal entry by eluding inspection a continuing

offense, it could have amended section 1325 when it amended section 1326 to add the "found in" language to section 1325.[2] It did not and this is significant.

The Government argues Congress setting venue in the place of apprehension for section 1325 offenses should be understood as Congress intending to make eluding a continuing offense. *See* § 1329. This is not convincing because it runs afoul of the canon of constitutional avoidance. Section 1329 does not distinguish between the crimes of entering the United States at an unauthorized place, entering the United States by concealment or misrepresentation, and eluding examination or inspection by immigration officers. This means Congress must have intended to establish venue for all three crimes in the place of apprehension.

The problem with this argument is that it is highly unlikely venue exists for the crimes of entering, attempting to enter, or obtaining entry in any place other than the district of entry. *See Gomez*, 38 F.3d at 1034 (for statute of limitation purposes, an alien who "enters" or "attempts to enter," the United States after being removed is not committing a continuing offense under section 1326). The Court finds it noteworthy the Government does not attempt to argue otherwise but limits its analysis to arguing that eluding alone is a continuing offense. The implication from the Government's construction of the statute is that Congress set venue in an unconstitutional place for two of the three crimes articulated in section 1325.

A more persuasive construction is that the "apprehension" portion of section 1329 exists because Congress was exercising its power to set venue for section 1325 crimes committed outside the States, i.e., in United States territories.[3] Eric S. Fish & Doug Keller,

---

[2] First *compare* Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 1, 45 Stat. 1551, 1551 (codified at 8 U.S.C. § 180 (Supp. III 1925), https://www.loc.gov/item/uscode1925-004008006/), *with* Act of June 27, 1952, Pub. L. No. 82-414, ch. 477, § 276, 66 Stat. 163, 229 (re-codified as amended at 8 U.S.C. § 1326) ("enters or attempts to enter" changed to "enters, attempts to enter, or is at any time found in"); and then *compare* Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1551 (codified at 8 U.S.C. § 180a (Supp. III 1925), https://www.loc.gov/item/uscode1925-004008006/), *with* Act of June 27, 1952, Pub. L. No. 82-414, ch. 477, § 275, 66 Stat. 163, 229 (re-codified as amended at 8 U.S.C. § 1325) ("eludes examination or inspection" remains unchanged).

[3] *See, e.g.*, *United States v. Ye*, No. CRIM. 04-00007-003, 2004 WL 1810575, at *4 (D.N. Mar. I. Aug. 16, 2004) (finding defendant guilty of illegally entering and attempting to enter the United States via the U.S. Territory of Guam pursuant to section 1325).

Fabricating the Crime of Undocumented Presence, 19–20, 50 (Nov. 14, 2025) (draft), https://ssrn.com/abstract=5750862. Under this interpretation, the district where the person is apprehended is the appropriate venue to prosecute someone who illegally entered a United States territory lacking a federal district court.[4] All other prosecutions "may be instituted at any place in the United States at which the violation may occur." § 1329. Under this reading, no portion of section 1329 is unconstitutional. While the Court need not reach (and is not reaching) a conclusion as to the entire construction of section 1329, this example illustrates there are other plausible explanations for the apprehension language.

The Court's reading of the statutory text is also bolstered by dictum from the Supreme Court. The Supreme Court has said that the offenses in section 1325 "are not continuing ones, as 'entry' is limited to a particular locality and hardly suggests continuity. Hence a specific venue provision in [8 U.S.C. § 1329] was required before illegal entry cases could be prosecuted at the place of apprehension."[5] *United States v. Cores*, 356 U.S. 405, 409 n.6 (1958).[6] The Court does not place undue weight on this footnote because whether section 1325 set forth a continuing offense was not the issue before the

---

[4] This is consistent with the general venue statute for offenses committed outside a federal district. *See generally* 18 U.S.C. § 3238 ("The trial of all offenses begun or committed . . . out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought[.]").

[5] Of course, the second half of this footnote could be read to suggest that the Supreme Court believed Congress constitutionally set venue in the place of apprehension for all section 1325 crimes. The Court does not believe the Supreme Court's dictum should be read this broadly. This was not the issue before the *Cores* court. Moreover, if this were the case, the place of apprehension alone would establish venue. There would be no need to assess whether eluding is a continuing offense. Even the DOJ is not taking this position. In a recent 2025 memorandum withdrawing its prior advice not to charge eluding offenses in a place other than the district of entry, the Office of Legal Counsel asserted:

> "[I]f section 1325(a) does not define a continuing offense, the crime was committed where the alien crossed into the country or in the district of the inspection station to which he was required to report upon entering, and nowhere else . . . So, if section 1325(a) offenses are non-continuing, Congress cannot constitutionally permit "prosecutions or suits" in a district "at which the person charged with a violation under section 1325 . . . may be apprehended" but where the violation did not "occur."

Whether Eluding Inspection Under 8 U.S.C. § 1325(a)(2) Is a Continuing Offense, Op. O.L.C., 5 (June 21, 2025) (slip op.), https://www.justice.gov/olc/media/1404581/dl.

[6] Congress has not amended the phrase "eludes examination or inspection" since it was enacted in 1929. *United States v. Corrales-Vazquez*, 931 F.3d 944, 947–48 (9th Cir. 2019) (detailing the legislative history of what is now section 1325). *See generally* Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1551 (codified at 8 U.S.C. § 180a (Supp. III 1925), https://www.loc.gov/item/uscode1925-004008006/).

*Cores* court. Nonetheless, it supports the Court's conclusion for the other reasons set forth herein that eluding under section 1325 is not a continuing offense.

Another consideration is the key verb test. *See* United States v. Crawford, 115 F.3d 1397, 1405 (8th Cir. 1997) (applying key verb test to determine whether Child Support Recovery Act set forth continuing offense). The key verb test can be helpful as an interpretive tool but is not the sole consideration. Rodriguez-Moreno, 526 U.S. at 279. Here, venue is proper in the place where a person "eludes" inspection but, contrary to the Government's arguments, the definition of the word "eludes" is not particularly helpful to determining whether section 1325(a)(2) sets forth a continuing offense.

Since the phrase, "eludes examination or inspection" "has remained unchanged since it was first used in 1929 . . . it presumptively retains its original meaning." United States v. Montes-De Oca, 820 Fed. App'x 247, 250 (5th Cir. 2020) (unpublished) (quoting United States v. Corrales-Vazquez, 931 F.3d 944, 947–48 (9th Cir. 2019)). "At the time of Congress's enactment of the statute, 'elude' meant 'to befool, delude'; 'to escape by dexterity or stratagem'; 'to evade compliance with or fulfilment of (a law, order, demand, request, obligation, etc.)'; 'to slip away from'; or 'to remain undiscovered or unexplained.'" *Id.* at 250–51 (quoting *Oxford English Dictionary* 97 (1933)). It also meant "'to delude, befool, frustrate'; 'to avoid slyly' or 'evade'; or 'to escape discovery or explanation.'" *Id.* (quoting *Webster's New Int'l Dictionary of the English Language* 713 (1929)). Today, "elude" is defined similarly and means "to avoid slyly or adroitly (as by artifice, stratagem, or dexterity): evade" or "to escape the notice or perception of." *Elude*, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/elude (last accessed January 15, 2026).

These definitions are not especially useful. A person may elude something once, at a specific place and moment in time (i.e., to escape by stratagem), or continuously elude an ongoing obligation (i.e., to escape discovery or to remain undiscovered). Contrary to the Government's argument, nothing about the word "elude" necessarily indicates section 1325(a)(2) is a continuing offense.

The Government argues "escape" is a synonym for "elude" and the Court should look to escape cases for guidance. Escape from federal custody, *see* 18 U.S.C. § 751(a),

is a continuing offense. *United States v. Bailey*, 444 U.S. 394, 413 (1980). Escape from federal custody is not an analogous crime to eluding inspection for three reasons.

First, in holding escape is a continuing offense, the *Bailey* court stated that, "[g]iven the continuing threat to society posed by an escaped prisoner, 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Bailey*, 444 U.S. at 413 (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)). This language comes from *Toussie*, which cautioned that, for statute of limitations purposes the Court should not construe a crime as a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115. Although statute of limitations cases are helpful persuasive authority, *see supra* note 1, the Court is not convinced it should apply the *Toussie* analysis when the issue in this case is proper venue. *See United States v. Dunne*, 324 F.3d 1158, 1166 (10th Cir. 2003) (a crime may occur in more than one geographical location without necessarily being considered a continuing offense for statute of limitations purposes under *Toussie*).

Second, to the extent *Toussie* does apply, escape under 18 U.S.C. § 751(a) is still not an analogous crime. For statute of limitations purposes, the Court should practice restraint in labeling crimes continuing offenses. *Bailey*, 444 U.S. at 413 (citing *Toussie*, 397 U.S. at 114–15). This principle is inapplicable in escape cases brought under section 751(a) because "the statute of limitations is tolled for the period that the escapee remains at large." *Bailey*, 444 U.S. at 414. The same is not true for the crime of eluding. *See generally* 18 U.S.C. § 3282 (5-year statute of limitations).

Additionally, based on the punishments Congress deemed appropriate for the two offenses, persons who are here illegally pose a lesser risk to society than escaped prisoners. Specifically, depending on the underlying conviction, escaping once pursuant to section 751(a) is punishable by a greater term of imprisonment than eluding inspection to enter the United States for the first time pursuant to section 1325. Additionally, every

9

person who escapes from prison has necessarily been convicted of a crime[7] and is committing a second crime. A person who eludes immigration inspection for the first time has only committed one crime and the maximum penalty is relatively light. Of course, illegally entering the United States is still a criminal offense and should not be minimized. However, to the extent *Toussie* should apply to questions of venue, the Court is not inclined to find eluding inspection is a continuing offense in the absence of clear statutory language on the grounds that persons eluding immigration inspection pose a threat to society akin to the threat posed by escaped prisoners.

Third, a prisoner is subject to an ongoing obligation to stay in prison. They are continuously evading that obligation every day they remain outside of prison. In contrast, section 1325 does not impose a similar obligation on aliens to report for inspection. Unlike escaped prisoners, there is no basis to conclude that aliens must continually report for inspection such that they are eluding inspection the entire time they are illegally present in the United States.

Specifically, aliens are obligated to enter the United States at an authorized place (presumably so the Government can inspect new arrivals, *see* 8 C.F.R. § 235.1) but failure to comply with this requirement is a separate crime under a different subsection of section 1325. *See* § 1325(a)(1). Additionally, Congress mandates that applicants for admission, including people who enter the country outside a designated port of arrival, "shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(1), (3). But this statute merely authorizes immigration officers to conduct inspections. It does not require aliens to report to the nearest immigration officer for inspection such that they are continually eluding inspection by failing to report. Finally, aliens who enter the United States are required to register and be fingerprinted. 8 U.S.C. § 1302(a). To the extent this can be construed as an ongoing obligation to report for inspection, failure to register is a separate crime. 8 U.S.C. § 1306. It is illogical to interpret registration requirements as eluding inspection when failure to comply with these requirements is a distinct offense.

---

[7] Or, at the very least, there is a reason to believe the person committed a wrongdoing beyond the crime of escaping because there is a reason the person was in federal custody in the first place. *See* 18 U.S.C. § 751(a) (criminalizing escape when the person is in custody pursuant to a felony arrest, extradition, exclusion or expulsion proceedings, or a misdemeanor).

This also ties into another of the Government's arguments—that eluding inspection is a continuing offense pursuant to the "nature and effects" test. *See Crawford*, 115 F.3d at 1406 (applying nature and effects test to determine whether Child Support Recovery Act set forth continuing offense). The nature of a crime is the conduct constituting the offense. *Mink*, 9 F.4th at 600. Venue is proper in a place where the effects of the crime are felt when Congress defined the essential conduct elements of the crime in terms of their effect. *United States v. Bowens*, 224 F.3d 302, 313 (4th Cir. 2000). *See, e.g.*, *Crawford*, 115 F.3d at 1406 (venue proper in place where child resided when statute criminalized failure to make child support payments to child who resided in another state). Venue is not proper in the place where the effect of the crime is felt unless Congress defined the essential conduct elements in terms of effect. *Bowens*, 224 F.3d at 311.

The nature of this crime (the conduct constituting the offense) is a failure to undergo immigration inspection. Congress did not define the essential conduct elements of this crime in terms of their effect, including any effect on the place an alien might reside after eluding inspection to illegally enter the country. Accordingly, this is not a basis to find eluding inspection is a continuing offense.

Rather, the nature of this crime is locality based. Venue exists in the place(s) the illegal alien was required to undergo inspection and did not. *See United States v. Wray*, 608 F.2d 722, 725 (8th Cir. 1979) ("When a statute criminalizes the failure to do a particular act, "proper venue, the place where the offense was committed, is the district in which the required act should have been done."). As discussed above, the statutes do not support finding an alien is subject to an ongoing, continuing obligation to report for immigration inspection pursuant to section 1325 after they illegally enter the country.

Ultimately, the allegations in the Complaint amount to an assertion that Defendant was present in the United States illegally. Defendant is a Honduran national who crossed into the United States somewhere in Texas. He was later found in Nebraska. Defendant was not continuously committing the crime of eluding inspection until he was found by virtue of merely living in Nebraska. It is the Government's burden to prove venue. There are no facts Defendant actually eluded inspection in Nebraska, whether at a port of entry or otherwise. Venue in Nebraska is improper. Accordingly, the Court grants Defendant's

motion to dismiss for improper venue. The Court dismisses without prejudice for the Government to re-file in the correct district.[8]

**CONCLUSION**

IT IS ORDERED that Defendant's motion to dismiss the criminal Complaint for improper venue, Filing No. 13, is granted. The Complaint is dismissed without prejudice.

Dated this 16th day of January, 2026.

BY THE COURT:


*s/ Jacqueline M. DeLuca*

United States Magistrate Judge

---

[8] The Court acknowledges this may be impossible because the Government asserts it is unknown which district in Texas Defendant entered the United States. It is believed that Congress included the "found" language in the illegal re-entry statute, section 1326, to alleviate this very problem. *See United States v. DiSantillo*, 615 F.2d 128, 135 (3d Cir. 1980) ("Congress must have included the word 'found' in [section] 1326 to alleviate the difficult law enforcement burden of finding and prosecuting" aliens who re-enter the country surreptitiously). The Court is not inclined to find venue exists for illegal entry in the district where the person is found because it may be difficult to determine where a person eluded inspection. If Congress wanted to make section 1325 a continuing offense to alleviate this problem, it could have amended section 1325 to add the found language when it added this language to section 1326.